E-FILED
Friday, 31 March, 2023  10:33:05 AM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | | |
|---|---|---|
| J.B. and G.B., minors, by their parents and next friends JASON BROCKETT and NICOLE BROCKETT, | ) ) ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 4:22-cv-04061-SLD-JEH |
| | ) | |
| BOARD OF EDUCATION OF WILLIAMSFIELD COMMUNITY UNIT SCHOOL DISTRICT #210; TIM FARQUER, individually and as Superintendent of WILLIAMSFIELD COMMUNITY UNIT SCHOOL DISTRICT #210; and ZACK BINDER, individually and as Principal of WILLIAMSFIELD COMMUNITY UNIT SCHOOL DISTRICT #210, | ) ) ) ) ) ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

ORDER

Before the Court are Defendants Board of Education of Williamsfield Community Unit School District #210 ("Williamsfield"), Tim Farquer, and Zack Binder's partial motion to dismiss, ECF No. 15, and Defendants' motion for leave to file a reply, ECF No. 17.  For the following reasons, the partial motion to dismiss is GRANTED, and the motion for leave to file a reply is GRANTED.

**BACKGROUND**[1]

Plaintiffs J.B. and G.B. are minor children; Jason Brockett ("Jason") and Nicole Brockett ("Nicole") are their parents.  Williamsfield is a municipal corporation existing under the laws of

---

[1] At the motion to dismiss stage, the court "accept[s] as true all well-pleaded facts in the complaint, and draw[s] all reasonable inferences in [the plaintiff's] favor."  *Pierce v. Zoetis, Inc.*, 818 F.3d 274, 277 (7th Cir. 2016).  Thus, the factual background is drawn from the amended complaint, ECF No. 7.

the State of Illinois.  Farquer was, at all times relevant to this suit, the superintendent of Williamsfield.  He is sued individually and in his official capacity.  Binder was, at all times relevant to this suit, the principal of Williamsfield.  He is sued individually and in his official capacity.

During the 2021–2022 school year, J.B. and G.B. were students at Williamsfield School, which is within the Williamsfield district.  Another minor, K.N., was also enrolled at the school during that time and was in the same grade as J.B.  On December 16, 2021, J.B. was standing outside the school during recess, holding a candy bar.  K.N. came up to her and knocked the candy bar out of her hands.  J.B. attempted to pick up the candy bar twice, but K.N. pushed her each time, presumably knocking her to the ground.  K.N. then began to kick at J.B.'s shins.  J.B. "kicked him and pushed him back in an attempt to get up."  Am. Compl. 3, ECF No. 7.  K.N. next called J.B.'s classmate a "bitch" and pushed her as well.  *Id*. (quotation marks omitted).  K.N. then grabbed J.B.'s throat and attempted to choke her.  The whistle blew at that time, indicating that recess was over.  Two female students who had seen the incident reported it to the teachers supervising recess, and J.B. also informed a different teacher about K.N.'s attack.  That teacher apprised Williamsfield administration, including Farquer and Binder, about the incident.  K.N. was not punished, removed from classes, or suspended that day.

Later that day, after school had ended, J.B. received a screenshot of a conversation discussing overhearing K.N. saying that he wanted to shoot her and two other female students.  J.B. told Nicole about the screenshot, and they, along with Jason, alerted the police.  Jason and the Sheriff's Department separately notified Williamsfield, Farquer, and Binder about the threat.

Due to K.N.'s continuing presence at the school, Jason told J.B. and G.B. to keep their phones with them at all times when they attended school the next day.  Final exams were

scheduled for that day.  During one exam, G.B.'s phone was on her desk in silent mode; other students also had their phones with them.  Williamsfield permits students to have their phones with them and normally permits students to put their phones on their desks.  However, that day, G.B.'s teacher directed G.B. to turn over her phone to him.  No other student was asked to give up his or her phone.  G.B. explained that her father had instructed her to keep her phone on her at all times, but the teacher told her to give him her phone or go to the principal's office.  G.B. refused to hand over her phone, and the teacher sent for Binder.  Binder took G.B. out into the hall and told her to give up her phone, then "began yelling at her."  *Id*. at 7.  They went to the principal's office, where Farquer got involved.  He called Jason to come pick up G.B.  Farquer also instructed G.B. to give her phone to him, and she complied.  He informed her that she was being sent home for being disrespectful.  When Jason arrived, he was "given no explanation of why G.B. was being suspended from school."  *Id*. at 8.  K.N. was permitted to remain in school during this time; however, later that day, he was arrested at the school for battery.

The following morning, J.B. was on her way to volleyball practice when Jason received a phone call from Farquer informing him that J.B. was being suspended from the volleyball team for "bullying."  *Id*. (quotation marks omitted).  Neither J.B. nor her parents were given further explanation as to what "bullying" incident Farquer was referring.  *Id*. (quotation marks omitted).

K.N. was permitted to return to school after the winter break and faced no further punishments or suspensions.  Jason and Nicole decided to remove J.B. and G.B. from Williamsfield because they felt that their children were not being protected from K.N.'s threats and that they were being retaliated against.  "Upon information and belief, other females who witnessed J.B.'s assault [have since] been . . . targets of retaliation by Williamsfield as well," and

3

"other females who were threatened by K.N. have not been protected by Williamsfield as K.N.'s behavior has, in no way, been curtailed by Williamsfield." *Id*. at 9.

Plaintiffs initiated this lawsuit on March 29, 2022. *See* Compl., ECF No. 1. The initial complaint used pseudonyms to refer to J.B. and G.B., *see id*.; pursuant to Court order, *see* Mar. 30, 2022 Text Order, Plaintiffs filed an amended complaint on March 31, 2022, using J.B. and G.B.'s initials instead, Am. Compl. In the amended complaint, Plaintiffs bring the following claims:

- **Count I:** Title IX claim against Williamsfield for deliberate indifference to K.N.'s assault of J.B., *id*. at 9–11;
- **Count II:** Title IX claim against Williamsfield for deliberate indifference to K.N.'s threats to shoot J.B., *id*. at 11–12[2];
- **Count III:** Title IX claim against Williamsfield for retaliating against J.B. for reporting K.N.'s assault and threats by suspending her from volleyball, *id*. at 12–13;
- **Count IV:** Title IX claim against Williamsfield for retaliating against G.B. because her sister J.B. reported K.N.'s assault and threats by suspending G.B. from school on the pretext of her phone being out, *id*. at 13–15;
- **Count V:** Title IX claim against Williamsfield for discriminatory discipline of J.B. on the basis of her sex, *id*. at 15–16;
- **Count VI:** Title IX claim against Williamsfield for discriminatory discipline of G.B. on the basis of her sex, *id*. at 16–17;
- **Count VII:** 42 U.S.C. § 1983 and Fourteenth Amendment claim against Farquer for deliberate indifference to K.N.'s assault of J.B., *id*. at 17–19;
- **Count VIII:** § 1983 and Fourteenth Amendment claim against Farquer for deliberate indifference to K.N.'s threats to shoot J.B., *id*. at 19–20;
- **Count IX:** § 1983 and Fourteenth Amendment claim against Farquer for retaliating against J.B. for reporting K.N.'s assault and threats by suspending J.B. from volleyball, *id*. at 20–21;
- **Count X:** § 1983 and Fourteenth Amendment claim against Farquer for retaliating against G.B. because J.B. reported K.N.'s assault and threats by suspending G.B. on the pretext of her phone being out, *id*. at 21–22;

---

[2] There are several pairs of deliberate indifference claims in the amended complaint brought on behalf of J.B. under the same laws and with similar text, discussing both K.N.'s assault of J.B. and his threats to shoot J.B. and other female students: Counts I and II, Counts VII and VIII, Counts XIII and XIV, and Counts XVII and XVIII. *See* Am. Compl. 9–12, 17–20, 24–27, 29–32. The main difference between these pairs is that the first is labeled "deliberate indifference—J.B." and the second is titled "deliberate indifference to retaliatory conduct—J.B." *See id*. (capitalization and emphases omitted). Because the second of each pair refers to K.N.'s threats to shoot J.B. and other female students as "retaliatory threats," *see, e.g*., *id*. at 12, the Court will proceed by assuming the first claim of each pair refers to deliberate indifference to K.N.'s assault of J.B. and the second claim of each pair refers to deliberate indifference to K.N.'s threats to shoot J.B. and other female students.

- **Count XI:** § 1983 and Fourteenth Amendment claim against Farquer for discriminatory discipline against J.B. on the basis of her sex, *id*. at 22–23;
- **Count XII:** § 1983 and Fourteenth Amendment claim against Farquer for discriminatory discipline against G.B. on the basis of her sex, *id*. at 23–24;
- **Count XIII:** §1983 and Fourteenth Amendment claim against Binder for deliberate indifference to K.N.'s assault of J.B., *id*. at 24–26;
- **Count XIV:** § 1983 and Fourteenth Amendment claim against Binder for deliberate indifference to K.N.'s threats to shoot J.B., *id*. at 26–27;
- **Count XV[3]:** § 1983 and Fourteenth Amendment claim against Binder for retaliating against G.B. because J.B. reported K.N.'s assault and threats by suspending G.B. from school on the pretext of her phone being out, *id*. at 27–28;
- **Count XVI:** § 1983 and Fourteenth Amendment claim against Binder for discriminatory discipline against G.B. on the basis of her sex, *id*. at 28–29;
- **Count XVII:** § 1983 and Fourteenth Amendment claim against Williamsfield for deliberate indifference to K.N.'s assault of J.B., *id*. at 29–31;
- **Count XVIII:** § 1983 and Fourteenth Amendment claim against Williamsfield for deliberate indifference to K.N.'s threats to shoot J.B., *id*. at 31–32;
- **Count XIX:** § 1983 and Fourteenth Amendment claim against Williamsfield for retaliating against J.B. for reporting K.N.'s assault and threats by suspending J.B. from volleyball, *id*. at 32–34;
- **Count XX:** § 1983 and Fourteenth Amendment claim against Williamsfield for retaliating against G.B. because J.B. reported K.N.'s assault and threats by suspending G.B. from school on the pretext of her phone being out, *id*. at 34–35;
- **Count XXI:** § 1983 and Fourteenth Amendment *respondeat superior* claim against Williamsfield for discriminatory discipline against J.B. on the basis of her sex, *id*. at 35–36;
- **Count XXII:** § 1983 and Fourteenth Amendment *respondeat superior* claim against Williamsfield for discriminatory discipline against G.B. on the basis of her sex, *id*. at 37–38;
- **Count XXIII:** § 1983 and Fourteenth Amendment due process claim against Farquer for depriving J.B. of her protected property interest—derived from Williamsfield's code of conduct—of the right to receive notice of any suspension and of her violation warranting suspension, *id*. at 38–39;
- **Count XXIV:** § 1983 and First Amendment claim against Farquer for engaging in conduct "designed to punish J.B. for the exercise of her freedom of speech in the form to [sic] her report to the police," *id*. at 39–40; and
- **Count XXV:** § 1983 and First Amendment claim against Williamsfield for engaging in conduct "designed to punish J.B. for the exercise of her freedom of speech in the form to [sic] her report to the police," *id*. at 40–41.

---

[3] Plaintiffs label this count as a second "Count XIV," but as it is preceded by the first "Count XIV" and succeeded by "Count XVI," the Court presumes a typographical error was made and will refer to this count as "Count XV." *See* Am. Compl. 26–28.  Because Defendants use "Count XIV" to refer to both Count XIV and Count XV in their partial motion to dismiss, *see* Partial Mot. Dismiss 2 n.1, the Court will evaluate whether each of Defendants' arguments pertains to Count XIV or Count XV on a case-by-case basis.

The instant motions followed.

## DISCUSSION

### I.      Motion for Leave to File a Reply

Defendants move for leave to file a reply brief in support of their motion to dismiss. Mot. Leave File Reply 1–2.  Plaintiffs oppose the motion, arguing that Defendants do not specify why a reply would be necessary and, further, fail to explain why leave to file a reply was not filed within fourteen days of Plaintiffs' response being filed.  Opp'n Mot. Leave File Reply 1–2, ECF No. 18.[4]  For all motions not for summary judgment, "[n]o reply to the response is permitted without leave of [c]ourt."  Civil L.R. 7.1(B)(3).  "Typically, reply briefs are permitted if the party opposing a motion has introduced new and unexpected issues in his response to the motion, and the [c]ourt finds that a reply from the moving party would be helpful to its disposition of the motion."  *Shefts v. Petrakis*, No. 10-cv-1104, 2011 WL 5930469, at *8 (C.D. Ill. Nov. 29, 2011).  A court may also permit a reply "in the interest of completeness."  *Zhan v. Hogan*, Case No. 4:18-cv-04126-SLD-JEH, 2018 WL 9877970, at *2 (C.D. Ill. Dec. 18, 2018) (quotation marks omitted).  Because the proposed reply would be helpful to the Court and in the interest of completeness, Defendants' motion for leave to file a reply is granted.  The Clerk is directed to file the proposed reply, ECF No. 17-1, on the docket.

### II.      Motion to Dismiss

#### a.   Legal Standard

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  At the motion to dismiss stage, the key inquiry is whether the complaint is "sufficient to provide the defendant with 'fair notice' of the

---

[4] The Local Rules do not specify by when a motion for leave to file a reply must be filed, so Plaintiffs assert no basis for why the timing necessitates denial of the motion.

plaintiff's claim and its basis." *Indep. Tr. Corp. v. Stewart Info. Servs. Corp*., 665 F.3d 930, 934 (7th Cir. 2012) (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)).  Courts may also consider "documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice." *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012).  While "detailed factual allegations are unnecessary, the complaint must have 'enough facts to state a claim to relief that is plausible on its face.'" *Pierce v. Zoetis, Inc*., 818 F.3d 274, 277 (7th Cir. 2016) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

When deciding on a motion to dismiss, "[t]he complaint's well-pleaded factual allegations, though not its legal conclusions, are assumed to be true," *Phillips v. Prudential Ins. Co. of Am*., 714 F.3d 1017, 1019 (7th Cir. 2013), and the court must also "draw all inferences in the light most favorable to the nonmoving party," *Vesely v. Armslist LLC*, 762 F.3d 661, 664 (7th Cir. 2014).  "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679.

### b.  Analysis

In their partial motion to dismiss, Defendants argue that Plaintiffs fail to plead claims under *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978), in Counts VII, VIII, XIII, XIV,[5] XVII, XVIII, XIX, XX, XXI, and XXII, Partial Mot. Dismiss 3–8; that Plaintiffs fail to allege that any Defendant was deliberately indifferent in Counts VII, VIII,

---

[5] Because Defendants refer here to Count XIV as a claim for "deliberate indifference," Partial Mot. Dismiss 4, the Court presumes they do not intend to make this argument as to Count XV.

XIII, XIV,[6] XVII, and XVIII, *id*. at 8–13; that Plaintiffs fail to state a claim for retaliatory

conduct under the Fourteenth Amendment in Counts IX, X, XV,[7] XIX, and XX, *id*. at 13; that

Plaintiffs fail to state a *respondeat superior* claim for discriminatory discipline against

Williamsfield in Counts XXI and XXII, *id*. at 13–14; that Plaintiffs fail to plead a due process

claim in Count XXIII, *id*. at 14–15; that Plaintiffs fail to allege discriminatory discipline claims

against Farquer and Binder in Counts XI, XII, and XVI, *id*. at 15–16; and that Plaintiffs fail to

state a claim for any First Amendment violation in Counts XXIV and XXV, *id*. at 16–18.  The

Court will address each of these arguments in turn.

     i.   **Monell Claims (Counts VII, VIII, XIII, XIV, XVII, XVIII, XIX, XX, XXI, and XXII)**

Counts VII, VIII, XIII, XIV, XVII, XVIII, XIX, XX, XXI, and XXII are brought against

Williamsfield, Farquer, and Binder pursuant to § 1983.  Am. Compl. 17–20, 24–27; 29–38.

§ 1983 permits a suit to be brought against a "person who, under color of any statute, ordinance,

regulation, custom, or usage . . . subjects, or causes to be subjected, any citizen of the United

States or other person within the jurisdiction thereof to the deprivation of any rights, privileges,

or immunities secured by the Constitution and laws."  "A municipality may not be held

derivatively liable for the constitutional violations of its employees under a *respondeat superior*

theory."  *Savory v. Cannon*, 532 F. Supp. 3d 628, 638 (N.D. Ill. 2021).  Rather, to state a § 1983

claim against a municipality—or a municipality's officers in their official capacity[8]—"a plaintiff

---

[6] Because Defendants refer here to Count XIV as a claim for "deliberate indifference," Partial Mot. Dismiss 10, the Court presumes they do not intend to make this argument as to Count XV.

[7] Defendants refer to this count as Count XIV, Partial Mot. Dismiss 13, but because they refer to a claim for retaliation, they clearly mean the count the Court refers to as Count XV, Am. Compl. 27–28.

[8] *Monell* applies to municipalities and municipal employees sued in their official capacities but not to employees sued in their individual capacities.  *See Helbachs Café, LLC v. City of Madison*, 571 F. Supp. 3d 999, 1008 (W.D. Wis. 2021); *see Kentucky v. Graham*, 473 U.S. 159, 165 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" (quoting *Monell*, 436 U.S. at 690 n.55)).

must allege that 'a government's policy or custom' is responsible for the constitutional injury."

*Id.* (quoting *Monell*, 436 U.S. at 694).  This requirement may be satisfied by an allegation that

the alleged unconstitutional act was caused by "(1) an official policy adopted and promulgated

by its officers; (2) a governmental practice or custom that, although not officially authorized, is

widespread and well settled; or (3) an official with final policy-making authority." *Thomas v.*

*Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2009).  Defendants argue that these

counts, as alleged against Williamsfield and against Farquer and Binder in their official

capacities,[9] should be dismissed because Plaintiffs fail to allege such a policy or custom.  Partial

Mot. Dismiss 4–8.  Plaintiffs counter that the amended complaint adequately alleges both an

express policy and a widespread practice.  Resp. 2–4.[10]

The Court looks first to whether Plaintiffs have alleged a relevant express policy.  The

only policies to which the amended complaint refers are two sections of the Williamsfield

Student Handbook ("Handbook"), which was attached to the amended complaint.  *See*

Handbook, ECF No. 7-1.  Plaintiffs allege that through one of these referenced sections,

"Williamsfield encouraged students to come to the school district and its employees, as opposed

---

[9] The amended complaint is brought against Farquer and Binder in both their individual and official capacities.  *See* Am. Compl. 1–2.  Plaintiffs do not specify whether each count against Farquer and Binder is brought against them in either or both capacities.  *See, e.g.*, *id.* at 17–20, 24–27; 29–38.  As such, the Court presumes each count against Farquer and Binder is brought against them in both their official and individual capacities.  In this section, the Court addresses Defendants' motion to dismiss the claims at issue in this section against Farquer and Binder based on *Monell* only insofar as the claims apply to Farquer and Binder in their official capacities; its resolution does not affect the claims at issue here against Farquer and Binder in their individual capacities.

[10] Plaintiffs do not claim that they have alleged an action by an official with final policy-making authority, *see* Resp. 2–4, and the Court does not find that the amended complaint alleges any such action.  To do so, a plaintiff must allege "actions of an individual who possesses the authority to make final policy decisions on behalf of the municipality or corporation." *Starks v. City of Waukegan*, 946 F. Supp. 2d 780, 792 (N.D. Ill. 2013) (quotation marks omitted); *Milestone v. City of Monroe*, 665 F.3d 774, 780 (7th Cir. 2011) ("Not every municipal official with discretion is a final policymaker; authority to make final policy in a given area requires more than mere discretion to act.").  The only officials referenced in the amended complaint are Farquer and Binder, and beyond stating that they were "actual agents, apparent agents, employees, and/or servants of Williamsfield," Am. Compl. 9, the amended complaint does not allege that either possessed final policy-making authority.  Thus, the amended complaint does not state *Monell* claims based on the actions of an official with final policy-making authority.

to the police, when reporting a crime involving any kind of bullying." Am. Compl. 5 (citing

Handbook 25). Through the other, Plaintiffs allege that "Williamsfield gave their employees

permission to notify authorities if a student violates a public law 'such as battery' but did not

make it mandatory for its employees to report such crimes." *Id*. (emphasis omitted) (quoting

Handbook 32). According to Plaintiffs, these policies in the Handbook "engendered a code of

silence as the custom or policy at Williamsfield" under which "Williamsfield and its employees

were the sole authoritative body for crimes amongst its students," "if Williamsfield and its

employees did not want to punish a student for a crime, they simply did not do so," "the

complaints of female students were taken less seriously than the complaints of male students,"

and "female students would be disciplined more harshly than male students." *Id*. at 5–6.

Because Plaintiffs attached the Handbook to the amended complaint, the Court may look

to the Handbook and come to its own interpretation of its terms. *See Rosenblum v.

Travelbyus.com Ltd*., 299 F.3d 657, 661 (7th Cir. 2002) (noting that where an external document

is considered part of the pleadings for a motion to dismiss, "[t]he court is not bound to accept the

pleader's allegations as to the effect of the exhibit, but can independently examine the document

and form its own conclusions as to the proper construction and meaning to be given the material"

(quotation marks omitted)); *Black Bear Sports Grp., Inc. v. Amateur Hockey Ass'n of Ill., Inc*.,

Case No. 18 C 8364, 2019 WL 2060934, at *6 (N.D. Ill. May 9, 2019) ("[T]he [c]ourt is not

obliged to take [the plaintiff's] interpretation of the [documents incorporated into the complaint]

at face value."). The section of the Handbook to which Plaintiffs cite regarding bullying states:

> Students are encouraged to immediately report bullying. A report may be made
> orally or in writing to the Principal, district complaint manager, or any staff member
> with whom the student is comfortable speaking. All school staff members are
> available for help with a bully or to make a report about bullying. Anyone,
> including staff members and parents/guardians, who has information about actual
> or threatened bullying is encouraged to report it to the district complaint manager

or any staff member.  Anonymous reports are also accepted by phone call or in writing.

Handbook 25.  And the section pertaining to notification of public law violations provides:

> Students must also obey all public laws while at school or at a school-related activity.  If a student violates a public law such as battery, arson, or destruction of others' property, the school officials have Board authority to notify the proper civil authorities.

*Id*. at 32.  The Court does not find that a reasonable reading of these terms shows a "code of silence"; such an interpretation goes far beyond the text of the Handbook and would simply be implausible.  And absolutely nothing in the Handbook suggests *discouragement* of reporting incidents to the police or disparate treatment of male and female students.  Thus, Plaintiffs have failed to allege the existence of an express policy that suffices under *Monell*.

The Court turns next to whether Plaintiffs have alleged a widespread practice or custom.  "To bring about *Monell* liability under a widespread practice or custom theory, a municipality's employees' conduct must occur frequently enough to give rise to a reasonable inference that the municipality is aware that public employees engage in the practice and do so with impunity."  *Savory*, 532 F. Supp. 3d at 638 (quotation marks omitted).  While "there are no bright-line rules concerning how often the offending conduct must occur to rise to the level of a custom, there must be some evidence demonstrating that there is a policy at issue rather than a random event or even a short series of random events."  *Id*. (quotation marks omitted); *see also Gable v. City of Chicago*, 296 F.3d 531, 538 (7th Cir. 2002) (holding that three incidents of constitutional violation within a four-year period "were too few to indicate that the City had a widespread custom of which City policymakers had reason to be aware"); *Starks v. City of Waukegan*, 946 F. Supp. 2d 780, 792 (N.D. Ill. 2013) (finding that the plaintiff failed to state a *Monell* claim

through a widespread practice or custom because he made only "wholly conclusory allegations of a de facto municipal policy" (quotation marks omitted)).

Plaintiffs argue that they have alleged a widespread practice or custom created by Defendants of a code of silence of wrongdoing and of harsher discipline of female students. Resp. 2–4. Conclusory allegations regarding Williamsfield's "code of silence," *see* Am. Compl. 5–6, do not suffice to indicate a widespread practice. *See Strauss v. City of Chicago*, 760 F.2d 765, 768 (7th Cir. 1985) ("To allow [a complaint containing only conclusory allegations of an official policy to go forward] would be tantamount to allowing suit to be filed on a *respondeat superior* basis." (quotations marks omitted)). And the only factual instances showing the alleged practice or custom relate to the specific incident underlying this suit. *See, e.g.*, Am. Compl. 9 ("[O]ther females who witnessed J.B.'s assault [have since] been . . . targets of retaliation by Williamsfield . . . ."); *id*. at 18 ("Farquer's response . . . allowing K.N. to remain in school after assaulting J.B. was clearly unreasonable and furthered Williamsfield's code of silence); *id*. at 33 ("Williamsfield's conduct . . . is clearly designed to threaten, intimidate, or otherwise interfere with J.B.'[s] reports of K.N.'s assaults and threats to her life and was part of its policy that it be the sole body to mete out punishment."); *id*. at 36 ("Williamsfield . . . continues to improperly and disproportionately discipline females though K.N., a male, who has assaulted another student and who threatened to shoot his fellow students, remains in school."). Such allegations show, at most, a single incident in which Williamsfield, Farquer, and Binder treated K.N. differently than the female students who reported his actions and failed to appropriately discipline K.N. In the absence of additional allegations showing that these "practices" occurred so frequently as to constitute a widespread practice or custom, the Court cannot plausibly infer the existence of an official policy or practice. *See Jaythan v. Bd. of Educ. of Sykuta Elementary Sch*., 219 F. Supp.

3d 840, 845 (N.D. Ill. 2016) (finding that the plaintiffs had failed to plead a custom or practice

under *Monell* because they "rel[ied] on a single event involving only [one of the plaintiffs]" and

thus "fail[ed] to demonstrate that there [wa]s a policy at issue rather than a random event"

(quotation marks omitted)).

Because Plaintiffs do not allege a governmental policy or practice, as required under

*Monell*, they have failed to state a claim against Williamsfield and against Farquer and Binder in

their official capacities in Counts VII, VIII, XIII, XIV, XVII, XVIII, XIX, XX, XXI, and XXII.[11]

These claims are therefore dismissed.[12]

### ii.  Deliberate Indifference (Counts VII, VIII, XIII, and XIV)

In Counts VII, VIII, XIII, and XIV, Plaintiffs bring § 1983 claims against Farquer and

Binder based on their alleged violation of J.B.'s equal protection rights through their deliberate

indifference to K.N.'s assault and threats.  Am. Compl. 17–20, 24–27.  Defendants argue that

these claims must be dismissed against Farquer and Binder in their individual capacities[13]

because Plaintiffs fail to allege an "invidious or discriminatory purpose."  Partial Mot. Dismiss

11.[14]  Defendants additionally contend that Plaintiffs "fail to allege what harm J.B. suffered by

anyone's deliberate indifference."  *Id*. at 12.  Plaintiffs counter that they have adequately pleaded

gender discrimination through their allegations of Binder and Farquer's actions under

Williamsfield's policy of punishing female students disparately from male students.  Resp. 6.

---

[11] Defendants later argue for dismissal of Counts XXI and XXII against Williamsfield because *respondeat superior* liability is not available under § 1983.  Partial Mot. Dismiss 13–14.  Because these counts are dismissed here, the Court will not address the *respondeat superior* argument.

[12] Counts VII, VIII, XIII, and XIV remain pending against Farquer and Binder in their individual capacities.

[13] These claims have already been dismissed against Farquer and Binder in their official capacities.  *See supra* Section II(b)(i).

[14] Defendants also argue that Plaintiffs fail to state a claim based on deliberate indifference against Williamsfield in Counts XVII and XVIII.  Partial Mot. Dismiss 8–10.  Because these counts have already been dismissed, *see supra* Section II(b)(i), the Court will not address this argument.

Moreover, they argue that they have alleged emotional harm and injury to J.B.'s education.  *Id.* at 6–7.[15]

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  *West v. Atkins*, 487 U.S. 42, 48 (1988). The constitutional injury alleged in these counts is a denial of equal protection under the Fourteenth Amendment.  *See* Am. Compl. 17–20, 24–27.  To state an equal protection claim, a plaintiff must allege that "(1) the defendants discriminated against her based on her membership in a definable class, and (2) the defendants acted with a 'nefarious discriminatory purpose.'" *Snyder v. Smith*, 7 F. Supp. 3d 842, 860 (S.D. Ind. 2014) (quoting *Nabozny v. Podlesny*, 92 F.3d 446, 453 (7th Cir. 1996)).  The "discriminatory purpose" element is more than mere negligence—the defendant must have acted "either intentionally or with deliberate indifference." *Nabozny*, 92 F.3d at 453–54.

Plaintiffs allege that Farquer and Binder discriminated against J.B. on the basis of her sex by permitting K.N. to remain in school after his assault of J.B. and his threat to shoot her and other female students, thus furthering a "code of silence" under which the complaints of female students were taken less seriously than those of male students and under which female students were disciplined more harshly than male students.  *See* Am. Compl. 5–6, 17–20, 25–27. However, nowhere in the amended complaint do Plaintiffs allege that Farquer and Binder acted with a nefarious discriminatory intent—that they acted with intent or deliberate indifference— and allegations that male and female students were treated differently cannot on their own state

---

[15] Defendants also argue that Plaintiffs have failed to allege the elements of a class-of-one equal protection claim, Partial Mot. Dismiss 11, but it is clear from Plaintiffs' response that they intend to bring claims based on gender discrimination, *see* Resp. 6.

an equal protection claim.  Thus, Plaintiffs have failed to plausibly plead an equal protection

violation.  *Cf. Guy v. State of Illinois*, 958 F. Supp. 1300, 1308 (N.D. Ill. 1997) ("[The] plaintiff

states that the actions of the individual defendants were motivated by their desire to deprive her

of equal protection rights, in particular her right to be free from discrimination on the basis of her

gender—sufficient allegations to support the intent requirement.").[16]  Counts VII, VIII, XIII, and

XIV are dismissed against Farquer and Binder in their individual capacities.

### iii.  Retaliatory Conduct (Counts IX, X, and XV)

Counts IX, X, and XV bring § 1983 claims against Farquer and Binder for retaliation

against J.B. and G.B. in violation of the Fourteenth Amendment equal protection clause.  Am.

Compl. 20–22, 27–28.  Defendants move to dismiss these claims because "there is no right to be

free from retaliation under the equal protection clause."  Partial Mot. Dismiss 13.[17]  Plaintiffs

argue that these claims "were correctly brought pursuant to the Fourteenth Amendment" because

they do "not alleg[e] a general right to be free from retaliation but instead argu[e] that they were

retaliated against on the basis of their gender."  Resp. 7 (quotation marks omitted).

The equal protection clause "does not establish a general right to be free from

retaliation."  *Grossbaum v. Indianapolis-Marion Cnty. Bldg. Auth.*, 100 F.3d 1287, 1296 n.8 (7th

Cir. 1996).  However, equal protection retaliation claims may be brought in some circumstances.

In *Boyd v. Illinois State Police*, 384 F.3d 888 (7th Cir. 2004), the Seventh Circuit considered

whether a plaintiff could bring an equal protection claim for retaliation because his supervisor

---

[16] Defendants posit that Plaintiffs "are really alleging that J.B. was injured by Farquer and Binder's failure to
intervene after she informed them of the alleged assault and threat made against her" but that "[e]ven if this were the
case, [Plaintiffs] failed to properly plead such a violation."  Partial Mot. Dismiss 12.  Plaintiffs do not address this
argument in their response.  To state a claim for failure to intervene, a plaintiff must allege that the defendant "(1)
knew that a constitutional violation was committed; and (2) had a realistic opportunity to prevent it."  *Gill v. City of
Milwaukee*, 850 F.3d 335, 342 (7th Cir. 2017).  The amended complaint does not allege that K.N. committed a
constitutional violation against J.B., so even if this were the theory, Plaintiffs have not adequately stated a claim.
[17] Defendants also move to dismiss Counts XIX and XX against Williamsfield on these same grounds, Partial Mot.
Dismiss 13, but these counts have already been dismissed, *see supra* Section II(b)(i).

allegedly retaliated against him for filing a lawsuit alleging discrimination.  *Id*. at 898.  The court found that his claim could "be vindicated under the First Amendment or Title VII, but not the equal protection clause" because he "ha[d] not asserted that [the defendant] retaliated against him on the basis of a protected trait or because of his membership in a particular class, but only because of his participation in th[e] litigation."  *Id*.; *see Yatvin v. Madison Metro. Sch. Dist.*, 840 F.2d 412, 418 (7th Cir. 1988) ("[R]etaliating against a person for filing charges of sex discrimination is not the same as discriminating against a person on grounds of sex . . . ." (citations omitted)).  In contrast, in *Locke v. Haessig*, 788 F.3d 662 (7th Cir. 2015), the Seventh Circuit found that a plaintiff could bring an equal protection retaliation claim where the retaliation occurred "because of a protected characteristic."  *Id*. at 672 (finding that "[a] reasonable jury could conclude that" the defendant retaliated against the plaintiff "because of his sex—because he was a man rather than a woman complaining of sexual harassment").

The question, then, is whether Plaintiffs allege that the retaliation occurred after J.B. reported K.N.'s actions because of J.B. and G.B.'s sex.  In Count IX, Plaintiffs allege that Farquer responded to J.B.'s reports of K.N.'s assault and threats by suspending her from volleyball and that this conduct was "designed to threaten, intimidate, or otherwise interfere with J.B.'[s] reports."  Am. Compl. 21.  In Counts X and XV, Plaintiffs allege that G.B. was suspended from school in response to J.B.'s reports and that the suspension was "clearly designed to threaten, intimidate, or otherwise interfere with J.B.'[s] reports."  Am. Compl. 21–22, 27–28.  Considering these allegations in the light most favorable to Plaintiffs, the clear inference is that any retaliatory action was in response to J.B. reporting K.N.'s threats and assaults; nowhere in these claims do Plaintiffs allege that the retaliation was on the basis of J.B. and G.B.'s sex.  Because the allegations are of a type the Seventh Circuit has found cannot be

brought under the equal protection clause, *see Boyd*, 384 F.3d at 898, Counts IX, X, and XV, are dismissed.[18]

### iv.  Due Process (Count XXIII)

In Count XXIII, Plaintiffs allege that Farquer violated J.B.'s due process rights under the Fourteenth Amendment by failing to provide her with notice, either before suspending her from the volleyball team or after, "for what actual behavior she was being suspended," because "J.B. had a recognizable property interest, given to her under Williamsfield's code of conduct, in being given notice of any suspension and of what she was adjudged by Farquer to have been guilty." Am. Compl. 38–39 (capitalization omitted).  Defendants argue that Count XXIII should be dismissed because Plaintiffs have failed to allege a protected property interest, as required to state a due process claim.  Partial Mot. Dismiss 14–15.  Defendants characterize the alleged property interest as a property interest in extracurricular activities, *id.*, but Plaintiffs respond that the property interest alleged is actually a right to have the procedures in the Handbook followed, Resp. 8–9.[19]  Defendants counter that, nevertheless, the amended complaint fails to allege such a property interest.  Reply 4.

The due process clause of the Fourteenth Amendment forbids state actors from "depriv[ing] any person of life, liberty, or property without due process of law."  *Goss v. Lopez*, 419 U.S. 565, 572 (1975).  To state a claim for deprivation of property, a plaintiff must first allege that she had a recognized property interest.  *See Bd. of Curators of Univ. of Mo. v.*

---

[18] Plaintiffs request leave to amend these claims to bring them under Title VII instead.  Resp. 7–8.  Title VII applies to employment discrimination, *see, e.g.*, *Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 825 (1976), and thus is inapposite here.  The Court does, however, grant Plaintiffs an opportunity to amend their complaint as a whole.  *See infra* Conclusion.

[19] Plaintiffs further argue that they have alleged a "liberty interest . . . in [J.B.] knowing and being able to respond to the charges . . . leveled against her."  Resp. 9.  As Defendants note, Reply 4 n.3, Plaintiffs plead only a property interest, not a liberty interest, in the amended complaint, Am. Compl. 38–39, and "a plaintiff may not amend his complaint in his response brief" to a motion to dismiss, *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 448 (7th Cir. 2011).  The Court will therefore not address this argument.

*Horowitz*, 435 U.S. 78, 82 (1978).  "Protected interests in property are normally not created by
the Constitution" but rather are created "by an independent source such as state statutes or rules
entitling the citizen to certain benefits."  *Goss*, 419 U.S. at 572–73 (quotation marks omitted).

Here, Plaintiffs allege that J.B.'s property interest derives from the Handbook.  *See* Am.
Compl. 38 ("J.B. had a recognizable property interest, given to her under Williamsfield's code of
conduct . . . ."); *see* Resp. 9 (clarifying that the code of conduct referenced is "the manual
attached to the Complaint"); *Early v. Bankers Life & Cas. Co*., 959 F.2d 75, 79 (7th Cir. 1992)
(noting that a plaintiff may allege facts consistent with the complaint in a response to a motion to
dismiss).  Plaintiffs do not identify *what* portion of the Handbook provides this property interest,
and having reviewed the Handbook in its entirety, the Court did not find any such provision.
The Handbook has a section on due process procedures, which provides that "[t]he Board of
Education and the district's certified personnel are required to adopt and enforce reasonable rules
and regulations to achieve this end [(maintaining discipline at the school)]," and further
establishes a procedure under which a student's parent or guardian can appeal a discipline
decision.  Handbook 35–36.  But it does not provide students with the right to notice of a
suspension and of the infraction leading to the suspension.  Plaintiffs assert that the Court must
adopt their interpretation of the Handbook as stated in the amended complaint because of the
procedural posture of the case, Resp. 9, but because they have provided the Handbook along with
the amended complaint, the Court may come to its own interpretation of the Handbook's terms.
*See Rosenblum*, 299 F.3d at 661.  Thus, the Court rejects Plaintiffs' assertion that the Handbook
provided J.B. with the alleged property interest.[20]

---

[20] Even if the Handbook did provide J.B. with the right to notice of her suspension and of the infraction leading to the suspension, such a right could not be vindicated under the Fourteenth Amendment due process clause.  *See Archie v. City of Racine*, 847 F.2d 1211, 1217 (7th Cir. 1988) ("[V]iolation of state law is not itself the violation of the Constitution. . . . [I]f state law establishes procedural entitlements, these are not themselves property and will not

Because Plaintiffs fail to plausibly allege that J.B. had a relevant protected property interest, they have failed to state a due process claim against Farquer in Count XXIII.

### v.  Discriminatory Discipline (Counts XI, XII, XVI)

In Counts XI, XII, and XVI, Plaintiffs allege that Farquer and Binder violated J.B. and G.B.'s equal protection rights under the Fourteenth Amendment by disciplining them and other female students disproportionately to K.N.  Am. Compl. 22–24, 28–29.  Defendants argue that these claims must be dismissed because Plaintiffs have failed to allege that Farquer and Binder acted with a nefarious discriminatory purpose.  Partial Mot. Dismiss 15–16.  They also argue that Plaintiffs fail to specifically allege that Farquer and Binder were acting under color of law as required.  *Id*. at 16.

The legal elements a plaintiff must plead to state an equal protection claim under the Fourteenth Amendment are discussed above.  *See supra* Section II(b)(ii).  Plaintiffs allege that J.B., G.B., and other female students were disproportionately disciplined compared to K.N., a male student, and therefore have plausibly alleged that J.B. and G.B. were discriminated against on behalf of their sex.  *See* Am. Compl. 22–24, 28–29.  But they do not allege that Farquer or Binder acted intentionally or with deliberate indifference and thus have failed to allege that they acted with a nefarious discriminatory purpose.  *See Nabozny*, 92 F.3d at 453–54.  Thus, Counts XI, XII, and XVI fail to state a claim for discriminatory discipline and must be dismissed.

### vi.  First Amendment Violations (Counts XXIV and XXV)

In Count XXIV, Plaintiffs allege that Farquer violated J.B.'s First Amendment rights when he punished her for reporting K.N.'s actions to the police by suspending her from

---

be enforced in the name of the Constitution." (citation omitted)); *Osteen v. Henley*, 13 F.3d 221, 225 (7th Cir. 1993) ("[A] violation of state law (for purposes of this case the student judicial code may be treated as state law) is not a denial of due process, even if the state law confers a procedural right.").

volleyball, thus furthering Williamsfield's "code of silence."  Am. Compl. 39–40.  In Count

XXV, Plaintiffs make the same claim against Williamsfield.  *Id*. at 40–41.  Defendants argue that

Count XXIV against Farquer in his official capacity and Count XXV against Williamsfield must

be dismissed because Plaintiffs fail to allege a relevant municipal policy or practice, as required

under *Monell* for § 1983 suits.  *See* Partial Mot. Dismiss 17.  They further contend that Count

XXIV against Farquer in his individual capacity should be dismissed because "J.B.'s police

report does not constitute protected speech [under the First Amendment] as it is purely a private

matter and not one of public concern."  *See id*. at 17–18.

The Court agrees that Plaintiffs fail to state *Monell* claims in Counts XXIV and XXV,

and therefore these counts must be dismissed against Williamsfield and Farquer in his official

capacity.  As discussed above, *see supra* Section II(b)(i), Plaintiffs do not plausibly allege that

Williamsfield had an express policy enshrining a "code of silence."  Nor do they point to any

other express policy designed to punish students for making police reports.  And the amended

complaint contains allegations of only one instance in which a student was allegedly punished

for making a police report—J.B. herself.  *See* Am. Compl. 39–41.  This single incident is not

sufficient to allege a widespread practice or custom.  *See Savory*, 532 F. Supp. 3d at 638.

Because Plaintiffs have failed to allege a relevant policy or practice under *Monell*, Count XXIV

against Farquer in his official capacity and Count XXV against Williamsfield must be dismissed.

What remains, then, is Count XXIV against Farquer in his individual capacity.  To bring

a claim under the First Amendment, Plaintiffs must first allege that J.B.'s speech was

constitutionally protected.  *See Swearnigen-El v. Cook Cnty. Sheriff's Dep't*, 602 F.3d 852, 861

(7th Cir. 2010).  Because J.B. is a private citizen, this means that they need to allege that J.B.'s

speech was a matter of public concern.  *See Houskins v. Sheahan*, 549 F.3d 480, 491–92 (7th Cir.

2008) (noting that when a person is acting as a private citizen, "[s]peech that serves a private or personal interest, as opposed to a public one, does not satisfy the standards for First Amendment protections").  "[T]he determination of whether speech is constitutionally protected is a question of law for the court." *Id.* at 489.  Speech addresses a matter of public concern where it can be characterized as "a matter of political, social, or other concern to the community" as opposed to an individual grievance. *See Cygan v. Wis. Dep't of Corr.*, 388 F.3d 1092, 1099 (7th Cir. 2004); *see also Glass v. Dachel*, 2 F.3d 733, 741 (7th Cir. 1993) ("The Supreme Court has elevated speech on such public issues where debate is vital to informed decisionmaking by the electorate." (quotation marks omitted)).  "The relevant inquiry is not whether the public would be interested in the topic of the speech at issue but rather is whether the purpose of the plaintiff's speech was to raise issues of public concern." *Houskins*, 549 F.3d at 492 (quoting *Boyce v. Andrew*, 510 F.3d 1333, 1344 (11th Cir. 2007)).  To make this determination, a court will look to "the content, form, and context of a given statement." *Glass*, 2 F.3d at 740 (quotation marks omitted).

In the amended complaint, Plaintiffs merely allege that after finding out about the overheard conversation in which K.N. stated that he wanted to shoot J.B. and two other female students, J.B. "alerted the police," Am. Compl. 4, and that she "exercise[d] . . . her freedom of speech in the form to [sic] her report to the police," *id.* at 40, 41.  Plaintiffs also state that Jason told J.B. and G.B. to keep their phones with them at all times the following day—the inference being that he was concerned for their safety—and that Jason and Nicole removed J.B. and G.B. from Williamsfield because they "felt that they were not being protected from threats by K.N." *Id.* at 6, 9.  Plaintiffs argue that the police report was a matter of public interest because it concerned "the safety of the general public." Resp. 9–10.  They assert that "the police report was

made because of a future threat to Plaintiffs and others since the threat was to be carried out during the school day" and that "Plaintiffs were essentially asking the police to look into the matter in order to prevent a shooting from occurring." *Id*. at 10–11.

But in assessing whether a report of a criminal incident is protected speech, the issue does not turn on whether the incident is in the past or threatened in the future. Rather, the question is whether the report's purpose was to address a grievance between the persons involved or whether it was to bring information to the public's attention. *See Houskins*, 549 F.3d at 483–84, 492 (finding that a police report made by the plaintiff was not protected speech because it was the plaintiff's "personal grievance" against a fellow employee of the Cook County Department of Corrections after he struck her in the face and was made for the purpose of having him arrested, not to "bring to light any wrongdoing" by the Department, such as "to raise public awareness about the safety of the employees within the [Department] or to uncover a policy of selective discipline or clout within the [Department]"). In *Kubiak v. City of Chicago*, 810 F.3d 476 (7th Cir. 2016), for example, the plaintiff police officer reported that a fellow officer verbally assaulted her and that she feared future violence from him. *Id*. at 479. The plaintiff argued that she made the complaints "out of fear for her own safety as well as for the safety of others" and that the court "should infer that she was motivated to help the public by notifying her superiors of the fact that [the fellow officer] posed a threat of violence, and thus conclude that she spoke on a matter of public concern." *Id*. at 483. The court rejected this inference and concluded that her complaints were of private concern because her comments were "focused on [the fellow officer's] actions toward [the plaintiff] personally" and on her "concerns about her own safety" and because the context "suggests that she was primarily motivated by personal concerns." *Id*. at 483–84. In contrast, in *Glass*, the court found that a county deputy sheriff's

complaints to a fellow officer accusing his supervisor of taking a lawn mower from the county's lost property room, where he also expressed concerns about other wrongdoing within the county sheriff's department, was a matter of public concern because, if true, the supervisor's actions and the department's sloppy investigation of the theft would have constituted "a breach of the public trust."  2 F.3d at 736, 741.

The allegations in the amended complaint, interpreted in the light most favorable to Plaintiffs, indicate that J.B.'s primary purpose in making the police report was to ensure her own safety and the safety of her sister and fellow students, not to expose wrongdoing by Williamsfield or other actors for the public's knowledge; indeed, nothing in the amended complaint implies that the report was made for any reason other than safety.  The Court therefore finds that the report, like those made in *Houskins* and *Kubiak*, was not a matter of public concern.  As such, Plaintiffs have failed to allege constitutionally protected speech.  The Court dismisses Count XXIV against Farquer in his individual capacity.

## CONCLUSION

For the foregoing reasons, Defendants Board of Education of Williamsfield Community Unit School District #210, Tim Farquer, and Zack Binder's partial motion to dismiss, ECF No. 15, is GRANTED, and Defendants' motion for leave to file a reply, ECF No. 17, is GRANTED. The Clerk is directed to file the proposed reply, ECF No. 17-1, on the docket.  Counts VII, VIII, IX, X, XI, XII, XIII, XIV, XV, XVI, XVII, XVIII, XIX, XX, XXI, XXII, XXIII, XXIV, and XXV are dismissed; Counts I, II, III, IV, V, and VI remain pending.  Plaintiffs J.B. and G.B., minors, by their parents and next friends Jason Brockett and Nicole Brockett, may file an amended complaint within 21 days of entry of this Order.  *See* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to file an amended complaint] when justice so requires.).

Entered this 31st day of March, 2023.

                                        s/ Sara Darrow
                                        SARA DARROW
                            CHIEF UNITED STATES DISTRICT JUDGE